IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| DEBRA M. PACE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:19-cv-01186-DCN-KFM |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security,[1] | ) ) | |
| Defendant. | ) ) | |

    This matter is before the court on Magistrate Judge Kevin F. McDonald's Report and Recommendation ("R&R"), ECF No. 22, that the court affirm Commissioner of Social Security Andrew Saul's (the "Commissioner") decision denying Debra M. Pace's ("Pace") application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Pace filed an objection to the R&R. ECF No. 23. For the reasons discussed below, the court adopts the R&R and affirms the decision of the Commissioner.

## I.  BACKGROUND

**A. Procedural History**

    Pace filed an application for DIB on March 21, 2012, alleging a disability onset date of January 26, 2012. Pace's coverage under the Act expired on December 31, 2017 ("date of last insured"), meaning that Pace must establish that she was "disabled" within the meaning of the Act on or before that date to be entitled to DIB. The Social Security

---

[1] Andrew Saul is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is automatically substituted for Nancy A. Berryhill, former Commissioner, as the defendant in this lawsuit.

1

Administration ("the Agency") denied Pace's application initially and upon reconsideration. Pace requested a hearing before an administrative law judge ("ALJ"), and ALJ Thaddeus J. Hess presided over a hearing held on January 7, 2014. In a decision issued on April 3, 2014, the ALJ determined that Pace was not disabled within the meaning of the Act (the "2014 ALJ Decision"). Tr. 27–53. Pace requested review of the 2014 ALJ Decision, and on August 31, 2015, the Appeals Council denied Pace's request for review, making the 2014 ALJ Decision the final decision of the Commissioner. Tr. 1–4.

Pace filed a civil action seeking review of the 2014 ALJ Decision with this court on October 29, 2015. See Pace v. Comm'r of Soc. Sec. Admin., No. 6:15-cv-04383-DCN (D.S.C.). Pursuant to 28 U.S.C. § 636 and Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), that action was assigned to Magistrate Judge Kevin F. McDonald, who issued an R&R on November 9, 2016 (the "2016 R&R"), recommending that the Commissioner's decision be reversed. Id. at ECF No. 18. On December 2, 2016, the court adopted the 2016 R&R and remanded the case to the Commissioner for further administrative action. Id. at ECF No. 21; Tr. 814–42. Accordingly, on June 26, 2017, the Appeals Council remanded the case to the ALJ. Tr. 843–45. The ALJ presided over a second hearing on November 30, 2017. Tr. 691–739. In a decision issued on May 22, 2018, the ALJ again determined that Pace was not disabled within the meaning of the Act (the "2018 ALJ Decision"). Tr. 624–90. The 2018 ALJ Decision became the final decision of the Commissioner when the Appeals Council denied Pace's request for review on March 15, 2019. Tr. 606–10.

Pace filed this action with the court on April 24, 2019, seeking review of the 2018 ALJ Decision. ECF No. 1, Compl. Pursuant to 28 U.S.C. § 636 and Local Civ. Rule

73.02(B)(2)(a) (D.S.C.), the action was again assigned to Magistrate Judge McDonald, who issued an R&R on June 18, 2020, recommending that this court affirm the ALJ's decision. ECF No. 22. On July 2, 2020, Pace filed objections to the R&R, ECF No. 23, and on July 14, 2020, the Commissioner responded, ECF No. 24. As such, this matter is now ripe for the court's review.

### B. Medical History

The parties are familiar with Pace's medical history, the facts of which are ably and thoroughly recited by the 2016 R&R. Therefore, the court dispenses with a lengthy recitation thereof and instead briefly recounts those facts material to its review of Pace's objections to the R&R. Pace initially claimed disability due to major depressive disorder, bipolar tendencies, anxiety, possible PTSD, and pain and fatigue associated with depression. Tr. 640. Pace was forty years old on her disability onset date and forty-six years old on her date of last insured. Pace has past relevant work as a rural mail carrier. Tr. 676.

### C. The 2018 ALJ Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe

3

impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "If an applicant's claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps." Id. (citing Hunter, 993 F.2d at 35).

       To determine whether Pace was disabled at any point between her alleged onset date of January 26, 2012 and her date of last insured, December 31, 2017, the ALJ employed the statutorily required five-step evaluation process. At step one, the ALJ found that Pace did not engage in substantial gainful employment during the period between her alleged onset date and date of last insured. Tr. 627. At step two, the ALJ determined that Pace suffers from the following severe impairments: "osteoarthritis and degenerative joint disease of the knees, degenerative disc disease, obesity, hypertension, degenerative joint disease of the shoulders, and mental impairments, including depressive disorder, bipolar disorder, anxiety disorder, OCD, and ADD/ADHD (20 CFR [§] 404.1520(c))." Id. At step three, the ALJ found that Pace's impairments or

combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of Impairments. Tr. 632. Before reaching the fourth step, the ALJ determined that Pace retained the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR [§] 404.1567(a) . . . ." Tr. 634. The ALJ found, at the fourth step, that Pace was unable to perform any past relevant work. Tr. 676. However, at step five, the ALJ determined that, based on her RFC, Pace could perform jobs that exist in significant numbers in the national economy. Tr. 677. Therefore, the ALJ concluded that Pace was not disabled under the meaning of the Act during the period at issue. Tr. 678.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted). Although the court will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir. 1987). While the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969).

### III.   DISCUSSION

Pace objects to the R&R's conclusion that the ALJ properly evaluated the medical source opinion evidence. Specifically, Pace argues that the ALJ failed to properly weigh the opinions offered by Dr. Ernest Martin in July 2013 and January 2017 and the opinion

offered by Dr. Eric Loudermilk in September 2017. ECF No. 23. The court reviews the standard an ALJ must employ in his or her consideration of medical opinion evidence and then discusses Pace's specific arguments with respect to each opinion in turn.

### A. Medical Opinion Evidence

Regardless of the source, an ALJ must evaluate every medical opinion a claimant provides. 20 C.F.R. § 404.1527(c). Where a claimant provides an opinion from a "treating source," the opinion is generally entitled to significant weight in the determination of disability under the treating physician rule. 20 C.F.R. § 404.1527(c)(2); see Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). In fact, the regulations demand that a medical opinion from a treating source be afforded "controlling weight" where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The Fourth Circuit has noted the treating physician rule makes good sense:

> treating physicians are given more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[].

Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)) (internal quotation marks omitted).

7

Where an opinion is not entitled to deference under the treating physician rule, the ALJ still must apply several factors to determine the weight the opinion should be afforded. 20 C.F.R. § 404.1527(c)(2). Those factors are: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, that is, the extent to which it is consistent with medical signs and laboratory findings, (4) the consistency of the opinions with the record and other opinions, (5) whether the physician is a specialist, and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)–(6). The ALJ must give "good reasons" in the decision for his or her assignment of weight to a treating source's opinion, 20 C.F.R. §§ 404.1527(c)(2), meaning that the decision

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2P.

The Fourth Circuit does not mandate an express discussion of each factor, and this court has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision." Hendrix v. Astrue, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010). A district court will not disturb an ALJ's determination as to the weight assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Craft v. Apfel, 164 F.3d 624, 624 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

### B. Dr. Martin's Medical Source Opinions

On July 1, 2013, Dr. Martin, Pace's treating psychiatrist, issued a medical source opinion regarding Pace. Dr. Martin opined that Pace was unable to return to work because she could not maintain adequate focus and concentration or follow instructions. Tr. 565. He opined that Pace had several relapses in the previous six months requiring ongoing medication management. Id. He also opined that Pace was unable to work in any setting. Tr. 564–65.

On January 26, 2017, Dr. Martin completed a second medical source opinion. After describing Pace's treatment history with him, Dr. Martin opined that Pace would not be able to interact appropriately with supervisors and coworkers and that her anxiety would cause her to have to leave the workplace to go outside or to leave the premises. Tr. 1685–86. Dr. Martin further opined that if Pace were placed under a "significant expectation" to perform that she would be unable to complete tasks. Id. In his opinion, she would also "over worry" about routine redirection from supervisors. Id. He also opined that Pace would tend to decompensate over ordinary work stressors. Id.

The ALJ assigned "partial weight" to Dr. Martin's opinions, explaining that,

> [Dr. Martin] is an acceptable medical source, a psychiatrist, and a treating source, including the mental health professional who has treated [Pace] for several years since 2012. As part of his treatment of [Pace], he examined [Pace] in a clinical setting and considered objective evidence, including clinical signs during examinations. However, many of his remarks and proposed limitations contrast with those from State Agency psychological medical consultants. Likewise, some of his remarks conflict with records from other treating sources, as well as findings at consultative and independent medical examinations. Furthermore, many of his remarks are in disagreement with his own treatment notes. Consequently, his medical source statements are not well-supported by medically acceptable clinical or laboratory diagnostic techniques and the opinions are not inconsistent with the other substantial evidence in the record.

Tr. 672. Pace argues that the ALJ improperly discounted Dr. Martin's opinions. Specifically, Pace objects to the Magistrate Judge's finding that the ALJ properly explained the inconsistencies in the record that warranted discounting Dr. Martin's opinions. Pace also objects to the Magistrate Judge's finding that it was proper for the ALJ to compare Dr. Martin's opinions to those of state agency reviewers. In considering these objections, the court's review is limited to determining whether the ALJ's evaluation of the medical source opinion evidence was supported by the substantial evidence and based upon correct standards of law. Here, the court finds that, contrary to Pace's objections, the ALJ properly evaluated Dr. Martin's opinions.

To begin, Pace accuses the ALJ of "backwards" weighing Dr. Martin's opinions by "setting the opinions of the non-examining consultants as Pace's pre-determined limitations and then weighing the other opinion evidence against the non-examining consultant opinions." ECF No. 23 at 4. To support her contention, Pace only points to one sentence in the ALJ's decision, where the ALJ acknowledges that "many of [Dr. Martin's] remarks and proposed limitations contrast with those from State Agency psychological medical consultants." Id.; see Tr. 672. The court fails to see how this sentence evinces any improper conduct by the ALJ. In his decision, the ALJ explained that he assigned only "partial weight" to the opinions of state agency psychological medical consultants and explicitly assured that "I have not simply adopted their proposed findings. Instead, I have reviewed the entire record when formulating the restrictions in the residual functional capacity." Tr. 670. Here, the court agrees with the Magistrate Judge that "it is not inappropriate for the ALJ to compare the opinions of record." ECF No. 22 at 10 (citing 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a

medical opinion is with the record as a whole, the more weight we will give to that medical opinion.")). The ALJ did no more than that when he contrasted Dr. Martin's limitations with the state agency opinions. Moreover, Pace's argument ignores the fact that the ALJ relied on more than just the contradictory state agency opinions in according "partial weight" to Dr. Martin's opinions. As explained below, the ALJ relied on other substantial evidence in the record, including the limited nature of the treatment relationship, Pace's own subjective allegations, Dr. Martin's treatment notes, and findings from Pace's consultative and independent medical examinations.

In weighing Dr. Martin's opinions, the ALJ summarized his consideration of the factors provided for in the regulations and then provided a lengthy discussion of the opinions' consistency and supportability with other evidence in the record. The ALJ correctly explained that Dr. Martin's July 1, 2013 opinion that Pace was unable to work in any setting was conclusory and constituted an ultimate determination reserved for the Commissioner. Tr. 672–73; see 20 C.F.R. § 404.1527(d) (noting that statements that an individual is "disabled" is one of certain items that are reserved to the Commissioner; thus, they are not entitled to controlling weight or special significance). The ALJ also explained that Dr. Martin treated Pace for obsessive-compulsive disorder, while Pace "rarely identifies obsessive-compulsive disorder" in her allegations, "rarely articulates any obsessive-compulsive traits," and even stated that she had been diagnosed with only "a little OCD." Tr. 672. This consideration of the nature and extent of the treatment relationship was proper. See 20 C.F.R. §§ 404.1527(c)(2)–(6). The ALJ then pointed out that Dr. Martin's opinion that Pace has experienced several relapses is contradicted by the fact that Pace has only been "psychiatrically hospitalized" once and "has not sought

recurrent care at the ER for exacerbations of symptoms related to mental conditions." Tr. 673.  The ALJ likewise explained that Dr. Martin's opinions that Pace would "decompensate in the face of ordinary work stressors," Tr. 1686, and would have trouble interacting with others, id., were contradicted by his own treatment notes.  For example, Dr. Martin noted that Pace "has normal memory, judgment, insight, and concentration"; "interacts and participates with others"; is "independent with activities of daily living"; "denies having suicidal ideation"; has "linear and goal directed thoughts"; is "normally groomed and fully oriented"; and has "no acute complaints" during many visits.  Tr. 672–673.  Finally, the ALJ's decision examined inconsistencies between Dr. Martin's opinions and findings during psychological examinations, which the R&R discusses in detail.  ECF No. 22 at 13–14 (citing Tr. 673–676).

Pace correctly points out that some evidence in the record supports Dr. Martin's opinions of Pace's limitations—including evidence within the same treatment notes and examination findings the ALJ relies on to discount Dr. Martin's opinions.  However, the court cannot disturb the ALJ's evaluation merely because other evidence exists that weighs against that evaluation.  See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ].").  To the contrary, this court may not disturb the ALJ's weighing of the medical opinion evidence of record absent some indication the ALJ dredged up "specious inconsistencies" or failed to give good reason for the weight assigned.  Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015).  Here, the ALJ considered all the evidence and ultimately decided to afford "partial weight" to Dr. Martin's opinions for the reasons

articulated above. As such, the ALJ's evaluation of Dr. Martin's opinions is based upon substantial evidence and without legal error. The court's limited review ends there.

### C. Dr. Loudermilk's Medical Source Opinion

On September 21, 2017, Dr. Loudermilk, Pace's treating pain management provider, completed a medical source statement. Dr. Loudermilk's opinion evaluated Pace's functioning since December 30, 2015, when he first began treating Pace. Tr. 1865–66. Dr. Loudermilk opined that Pace would be unable to engage in more than sedentary work for eight hours a day and five days a week. Id. In his opinion, during a normal work week, Pace would have to rest away from the work area for more than an hour and would miss more than three days of work per month. Id. Dr. Loudermilk opined that Pace's trouble with concentration would "frequently interrupt tasks" during a normal workday. Id.

The ALJ considered Dr. Loudermilk's opinions and assigned them "partial weight," explaining,

> Overall, I give Dr. Loudermilk's remarks partial weight rather than controlling weight (71F). He is an acceptable medical source, a specialist in pain management, and a treating source from about December 2015 though at least August 2017. Dr. Loudermilk has treated [Pace] for pain in the shoulders, spine, and knees. As part of his treatment of [Pace], he examined [Pace] in a clinical setting and considered objective evidence, including clinical signs during examinations and objective findings on diagnostic imaging, including MRI. However, many of his remarks and proposed limitations contrast with those from State Agency physical medical consultants. His remarks conflict somewhat with records from other treating sources, including treating orthopedist, Dr. Siffri, as well as findings during office visits with other treating sources. Furthermore, many of his remarks are in disagreement with his own treatment notes. A portion of Dr. Loudermilk's statement rests on his conclusion that [Pace] has fibromyalgia, but fibromyalgia is not a medically determinable impairment. Dr. Loudermilk has provided only conservative care, primarily via medication and injections in the cervical spine and thoracic spine area. Consequently, his medical source statements are not well-supported by

13

> medically acceptable clinical or laboratory diagnostic techniques and the opinions are not inconsistent with the other substantial evidence in the record.

Tr. 667. Pace objects to the Magistrate Judge's finding that the ALJ properly (1) explained how Dr. Loudermilk's medical opinion was inconsistent with the record as a whole or not supported by his own treatment records; (2) concluded that Dr. Loudermilk's opinion was inconsistent with his conservative care; and (3) discounted Dr. Loudermilk's opinion to the extent it relied upon a diagnosis of fibromyalgia.[2] For the reasons set forth below, the court overrules each objection.

The ALJ's decision noted that Dr. Loudermilk's opinion was inconsistent with Dr. Siffri's opinion, findings from other treating sources, Dr. Loudermilk's own treatment notes, and the "conservative care" Dr. Loudermilk provided Pace. Specifically, the ALJ noted that "records from primary care physicians, a pulmonologist, a gastroenterologist, a rheumatologist, and a weight loss specialist were normal or no more than marginally abnormal, including in terms of gait, posture, muscle strength, and range of motion, for example." Tr. 670. To support this assertion, the ALJ detailed Pace's medical history with respect to her knees, shoulders, and spine. The ALJ discussed Pace's knee replacements but also explained that after these replacements, Pace "reported that she was doing well overall from both her knees with no issues, concerns, or complaints" in both January 2016 and February 2017, had "no more than marginally abnormal" knee exams, and normal diagnostic imaging of the knees. Tr. 668–69. With

---

[2] Pace also objects to the Magistrate Judge's finding that the ALJ properly compared Dr. Loudermilk's opinions to those of state agency reviewers. However, the court disposed of this argument with respect to Dr. Martin above, and the same analysis applies here. As such, the court again rejects this argument.

14

respect to Pace's shoulders, the ALJ pointed out that "Dr. Siffri believed that [Pace] does pretty well, despite the severity of her tears, weakness during rotator cuff tearing and recent increase in pain. He proposed that [Pace] might improve with shoulder surgery, and she could currently lift 10 pounds above her shoulder level." Tr. 669. With respect to Pace's spine, the ALJ noted that "[d]uring pain management visits, including with Dr. Loudermilk, MRI of the lumbar spine was largely unremarkable with only very mild lower lumbar facet arthrosis and no fracture, disc herniation, or compressive discography." Tr. 669.[3] The ALJ further discussed how the treatment notes report that Pace had "5/5 muscle strength," that Pace "confirmed that conservative medication such as Ibuprofen had been very helpful," that during a visit Pace "was in no acute distress, alert, and oriented with appropriate affect and intact judgment and insight," and that during another visit Pace "confirmed that recent physical therapy had worked well." Tr. 668-69. Based on the ALJ's thorough summary and analysis, the court finds that the ALJ's assignment of "partial weight" to Dr. Loudermilk's medical opinion is supported by substantial evidence and without legal error. Moreover, in his decision, the ALJ gave "good reasons," as required by 20 C.F.R. §§ 404.1527(c)(2), for his assignment of weight to Dr. Loudermilk's opinion. See SSR 96-2P. As such, the court overrules Pace's objections as to the ALJ's evaluation of Dr. Loudermilk's opinion.

---

[3] The court is unconvinced by Pace's argument that ALJ was "play[ing] the role of doctor" and improperly interpreting the raw MRI data here. ECF No. 23 at 8. Instead, the ALJ merely repeated the findings and conclusions articulated in Pace's treatment notes. Tr. 669 (citing Tr. 1695-70). As such, the ALJ's consideration of the consistency of Dr. Loudermilk's opinion with the record, including the MRI findings, was proper. See 20 C.F.R. §§ 404.1527(c)(2)–(6).

The court need not decide whether the ALJ's characterization of Dr. Loudermilk's care as "conservative" is inconsistent with the evidence in the record. Pace's allegedly conservative treatment regime with Dr. Loudermilk was only one of the grounds on which the ALJ relied in according "partial weight" to Dr. Loudermilk's opinions. As explained above and in the R&R, the ALJ also relied on numerous findings in Pace's medical records that contradicted Dr. Loudermilk's opinions. Again, the question before the court is simply whether the ALJ's decision to discount Dr. Loudermilk's medical opinion is supported by substantial evidence and without legal error. Having so found, the court finds inconsequential the question of whether Dr. Loudermilk's care was, in fact, "conservative."

Pace's objection regarding the ALJ's consideration of Dr. Loudermilk's fibromyalgia diagnosis fails for similar reasons. The ALJ noted that "[a] portion of Dr. Loudermilk's statement rests on his conclusion that [Pace] has fibromyalgia, but fibromyalgia is not a medically determinable impairment." Tr. 667. The ALJ further explained that, although Pace alleged widespread pain, there was no evidence in the record indicating that Pace had 11 of 18 positive trigger points bilaterally or that other disorders had been excluded as the cause of Pace's widespread pain, as required to find a medically determinable impairment of fibromyalgia under SSR 12-2p. Tr. 631–32. Supportability is a proper consideration in weighing opinions from treating providers. 20 C.F.R. § 404.1527(c). As such, the ALJ did not err in noting that Dr. Loudermilk's opinion relied, at least in part, on a diagnosis that was not supported by the record. And again, the ALJ's decision to accord "partial weight" to Dr. Loudermilk's opinions is supported by substantial evidence other than Dr. Martin's reliance on his fibromyalgia

diagnosis. In sum, the ALJ's decision to accord "partial weight" to Dr. Loudermilk's opinions is supported by substantial evidence and without legal error. Accordingly, the court overrules Pace's objections, adopts the R&R, and affirms the decision of the Commissioner.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **AFFIRMS** the final decision of the Commissioner.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 16, 2020**
**Charleston, South Carolina**